IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMIKA WALLER,<br><br>Plaintiff,<br><br>v.<br><br>THE HABILITATION GROUP, LLC,<br>JEAN MCCANNA,<br><br>Defendants. | 2:21-CV-00519-CCW |

**MEMORANDUM OPINION**

Before the Court are cross-motions for partial summary judgment filed by Plaintiff Tamika Waller, ECF No. 47, and Defendants The Habilitation Group and Jean McCanna (together, "Defendants"), ECF No. 48.

The thrusts of Ms. Waller's claims are that Ms. McCanna and Ms. McCanna's company The Habilitation Group improperly classified Ms. Waller as an independent contractor as opposed to an employee and failed to pay Ms. Waller overtime, in violation of the Fair Labor Standards Act and several Pennsylvania state laws, and that Defendants also retaliated against Ms. Waller in violation of the Pennsylvania Whistleblower Law by terminating her. *See generally* ECF No. 21. Following the close of discovery, the parties filed cross-motions for partial summary judgment. ECF Nos. 47 & 48. Ms. Waller seeks summary judgment in her favor on her FLSA claim in Count II. Defendants seek summary judgment on Count I (joint and several liability under state law participation theory), Count V (retaliation under the Pennsylvania Whistleblower Law), and Count VI (unjust enrichment).[1]

[1] Defendants sought summary judgment on Count VI (unjust enrichment). In response to Defendants' Motion, Ms. Waller has withdrawn this claim, ECF No. 61 at 11. Accordingly, Count VI will be dismissed on that basis.

For the following reasons, the Court will deny Ms. Waller's Motion for Summary Judgment, grant Defendants' Motion for Summary Judgment with respect to Count I, and deny Defendants' Motion with respect to Count V.[2]

## I. FACTS

The following facts are undisputed unless otherwise noted.

The Habilitation Group is a limited liability company that provides caregiving services to people with intellectual disabilities. ECF No. 68 ¶ 1; ECF No. 64 ¶ 18. The business is funded entirely through Medicaid funds with its owner and founder, Ms. McCanna, acting as the sole operator of the business. ECF No. 64 ¶¶ 4, 17, 63; ECF 65-2 ¶ 2; ECF No. 68 ¶¶ 2, 3. Ms. Waller was a caregiver who performed work for The Habilitation Group from September 26, 2014 to May 1, 2020. ECF No. 64 ¶ 17.

The Habilitation Group requires each caregiver to sign independent contractor agreements before performing work for the company. ECF No. 68 ¶ 5; ECF No. 65-2 ¶¶ 2, 9; *see generally* ECF No. 57-3. The caregivers must have a high school degree or GED, but specialized accreditation is not required. ECF No. 64 ¶ 56. The caregivers are paid at a fixed hourly rate set by Ms. McCanna. ECF No. 64 ¶ 82. As part of their job, they are required to follow a list of daily tasks, known as individual service plans, that are unique to each client. ECF No. 64 ¶¶ 57–60; ECF 65-2 ¶ 29; ECF 57-1 at 47:24–48:24. The parties dispute the consequences for failing to complete these tasks. Ms. Waller contends that a failure to complete these tasks could result in termination. ECF No. 64 ¶ 61. By contrast, Defendants refer to completing these tasks as a "general obligation" but emphasize that Ms. McCanna has never actually disciplined anyone in connection with how these tasks are performed. ECF No. 64 ¶ 101–05. Defendants note that, with

[2] This Court has federal question jurisdiction over the FLSA claim under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims.

the exception of these daily tasks, the caregivers are free to participate in any activity with their client without input from Ms. McCanna. ECF No. 65-2 ¶ 26–28; ECF No. 64 ¶ 93, 101–03.

Ms. McCanna carries general commercial liability insurance that covers any damages caused by the caregivers and does not require any of the caregivers to take out their own commercial insurance. ECF No. 64 ¶¶ 67, 70, 71. However, Ms. McCanna does not cover travel expenses, supplies, or activity costs with a client that a caregiver may incur. ECF No. 64 ¶¶ 81–82.

The parties dispute certain aspects of how caregivers scheduled appointments and received assignments. Defendants contend that the caregivers had the choice to accept or decline any client. ECF No. 64 ¶¶ 62, 86, 96; ECF No. 65-2 ¶ 21. According to Defendants, the caregivers could exercise complete discretion in whether they provided services to a particular client. ECF No. 64 ¶¶ 64, 97; ECF 57-2 at 34:6–12; ECF No. 65-2 ¶¶ 21-24. By contrast, Ms. Waller notes that if caregivers wanted to take assignments, they still needed approval from Defendants. ECF No. 68 ¶¶ 9, 14; *see, e.g.*, ECF No. 21-2 at 14; *see also* ECF No. 57-1 at 112:18–113:21. Defendants dispute this characterization and continue to stress that Ms. Waller had absolute discretion to accept or decline any assignment. ECF No. 64 ¶¶ 64, 97.

Ms. Waller first joined The Habilitation Group in 2014 and, at that time, signed an independent contractor agreement. ECF No. 64 ¶ 77; ECF No. 68 ¶ 5; *see generally* ECF No. 57-3. For the next almost six years, Ms. Waller worked only for The Habilitation Group. ECF No. 64 ¶ 17; ECF No. 63 at 13. During this time, she provided caregiving services to clients with intellectual disabilities as a Community Participation Support ("CPS") member, often in excess of forty hours per week. ECF No. 64 ¶ 55. Despite working overtime, she was only paid her base hourly rate. ECF No. 57-1 at 119:12–120:2.

Starting in March of 2020, Ms. McCanna did not send any more assignments to Ms. Waller due to the pandemic. ECF No. 57-2 at 56:12–20; ECF No. 64 ¶ 22. Ms. Waller continued to reach out to Ms. McCanna asking for work. ECF No. 64 ¶ 23.

On April 6, 2020, Ms. Waller sent Ms. McCanna guidance from the Pennsylvania Office of Developmental Program ("ODP") that Ms. Waller contends indicates she would have been able to return to work based on ODP disbursement of pandemic relief to CPS workers. ECF No. 61-7 at 3; ECF No. 21-1 at 3.[3] Defendants dispute that this announcement would have enabled Ms. Waller to return to work. ECF No. 64 ¶ 40.

On April 30, 2022, Ms. Waller again reached out to Ms. McCanna about returning to work, using such funds. ECF No. 61-6 at 3. Ms. McCanna responded, "I keep you employed at my discretion. . . . I will look for, and disburse, any money due you as it becomes available." *Id.* at 2. This same date, Ms. Waller also informed Ms. McCanna that Ms. Waller had been denied unemployment. ECF No. 68 ¶ 9; ECF No. 61-7 at 5. When Ms. McCanna asked why Ms. Waller was denied unemployment, Ms. Waller responded that the "employer didn't report any wages between the dates of October 2018 til [*sic*] September 2019." ECF No. 61-7 at 6. Ms. Waller elaborated that she worked this period consistently and filed taxes for this period, so she does not understand why these records are missing. *Id.* Ms. McCanna responded, "I didn't report your income because [you] didn't ask me to." *Id.* Ms. Waller claims that she was denied unemployment because Ms. McCanna failed to report her earnings accurately. ECF No. 68 ¶ 8. By contrast, Ms. McCanna claims that Ms. Waller was not eligible for unemployment because she was an independent contractor. ECF No. 68 ¶ 12.

---

[3] The ODP is a state program primarily responsible for overseeing services for people with intellectual disabilities. ECF No. 57-1 at 110:2–9.

It is undisputed that in response to Ms. Waller asking to return to work, Ms. McCanna emailed her:

> I think you have forgotten that I am your boss and I can communicate with you at my discretion. I keep you employed at my discretion. If you quit now, or if I were to let you go, you would not be qualified for unemployment so keeping that in mind we can continue from there.

ECF No. 64 ¶ 50; ECF No. 54 at 19; ECF No. 61-6 at 2.

A few weeks later, Ms. Waller asked again to be paid with the ODP funds for CPS workers. ECF No. 61-6 at 3. Ms. McCanna told her that that was not the purpose of the funds. *Id.* at 4; ECF 64 ¶ 53. On May 1, 2020, Ms. Waller emailed Ms. McCanna, "Thanks for clarifying that the CPS funds you received from ODP are not for your CPS workers." ECF No. 61-6 at 4. A few hours later, Ms. McCanna responded, "I think I'm pretty much done with you, so it is probably in your best interest to start looking for work elsewhere." *Id.*; ECF No. 64 ¶ 54. The parties agree that this exchange terminated their working relationship. ECF No. 68 ¶ 9.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 170 (3d Cir. 2017) (cleaned up). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is 'material' if it

'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

The burden to establish that there is no genuine dispute as to any material fact "remains with 'the moving party regardless of which party would have the burden of persuasion at trial.'" *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (quoting *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987)). That said, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted). Thus, while "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, summary judgment "requires the nonmoving party to go beyond the pleadings" and point to "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted). But, while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor . . . . to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013)

(internal citations and quotations omitted). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 requires the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23; *Jakimas v. Hoffman La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

"Where, as here, cross-motions for summary judgment are filed, 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Reynolds v. Chesapeake & Del. Brewing Holdings, LLC*, Civil Action No. 19-2184, 2020 WL 2404904, at *3 (E.D. Pa. May 12, 2020) (quoting *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016)).

## III. DISCUSSION

The Court will first address Ms. Waller's Motion and will then turn to Defendants' Motion. Notably, "in a motion for summary judgment, it is initially the moving party's burden to demonstrate the absence of a genuine dispute of material fact." *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up); *see also Aman*, 85 F.3d at 1080. Therefore, in reviewing the FLSA claim, the burden is on Ms. Waller to establish that there is no genuine dispute of material fact.

### A. Ms. Waller's Partial Motion for Summary Judgment

Ms. Waller seeks summary judgment in her favor as to both liability and damages on her claim in Count II that Defendants violated the Fair Labor Standards Act by failing to pay her overtime. ECF Nos. 47 & 54. Ms. Waller's claim under the FLSA turns on whether she was an

independent contractor or an employee of Defendants. Because the Court finds that material issues of fact exist on this issue, Ms. Waller is not entitled to summary judgment on Count II.

### 1. Material Issues of Fact Exist as to Whether Ms. Waller was an Employee or Independent Contractor

Under the FLSA, employers are required to pay their employees an overtime premium rate of "one and one-half times the regular rate at which [the employee] is employed" for hours worked over forty in a week. 29 U.S.C. § 207. Independent contractors, however, are not entitled to the premium overtime rate under the FLSA that those classified as "employees" receive. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728–29 (1947) (refusing to extend protections under the FLSA to independent contractors).

A worker's classification is determined by the "economic reality" of the working relationship. *Tony & Susan Alamo Found.* v. *Sec'y of Labor*, 471 U.S. 290, 301 (1985) (quoting *Goldberg* v. *Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)); *see also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) (noting the employment relationship should not depend on "isolated factors" but rather, "upon the circumstance of the whole activity"). In the Third Circuit, the "economic reality" is evaluated under the six-factor test set forth in *Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376 (3d Cir. 1985). *See, e.g.*, *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1293–94 (3d Cir. 1991) (applying *Donovan* factors); *Safarian v. Am. DG Energy Inc.*, 622 Fed. App'x 149, 151 (3d Cir. 2015) (same). The six-factor test examines:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
>
> 2) the alleged employee's opportunity for profit or loss depending upon his [or her] managerial skill;
>
> 3) the alleged employee's investment in equipment or materials required for his [or her] task, or his [or her] employment of helpers;

> 4) whether the service rendered requires a special skill;
>
> 5) the degree of permanence of the working relationship; [and]
>
> 6) whether the service rendered is an integral part of the alleged employer's business.

*Donovan*, 757 F.2d at 1382. The Third Circuit has noted that "neither the presence nor the absence of any particular factor is dispositive." *Martin*, 949 F.2d at 1293.

Although district courts are instructed to apply these factors, determining whether a worker is an employee under the FLSA is a mixed question of fact and law. *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 229 (3d Cir. 2019). A factfinder should determine "the combination of disputed and undisputed facts that comprise the economic relations between the worker and the alleged employer," and the court can only evaluate "whether those facts make a worker an 'employee' or 'independent contractor.'" *Id.* If there are genuine issues of fact, the district court should not decide a worker's classification and should, instead, have the jury resolve it "through either special interrogatories or by deciding the classification issue." *Id.*; *see also Razak*, 951 F.3d at 145.

The parties dispute almost every *Donovan* factor.[4] First, on the issue of control, Ms. Waller describes Ms. McCanna as having "nearly total control" over her staff, including the daily tasks the workers must complete, the assignments that workers received, and the staffing schedule. ECF No. 54, at 17–18; *see* ECF No. 54-1 at 48:25–49:13, 49:14–50:25. Ms. Waller also notes that Ms. McCanna made several comments that indicate Ms. McCanna believed she had control over her staff, such as "I keep you employed at my discretion" and "I am your boss." ECF No. 54 at 19 (citing ECF No. 61-6 at 2).

[4] To the extent that Ms. Waller asks the Court to consider Ms. McCanna's representation to others that the caregivers were "employees," such representations are not relevant under the *Donovan* test. Ms. Waller's argument that those involved in "companionship services" are entitled to an overtime premium rate is also inapplicable as the regulation only applies to "employees," which is the very issue being contested. 29 C.F.R. § 525.109(a) (extending FLSA protections to "employees" engaged in companionship services as defined in 29 C.F.R. § 552.6)

By contrast, Defendants argue that Ms. McCanna had "never exerted any control" over her staff, particularly as it pertained to how workers completed their daily tasks, the assignments that workers chose to accept, and a workers' individual schedule. ECF No. 63 at 3–5. In her deposition, Ms. McCanna explained that her staff call "when they're going to go on vacation. But they don't, like, ask for it. They tell [her] when it's going to happen. They're pretty much in control of what they do." ECF No. 47-3 at 61:1–6. Furthermore, Defendants maintain that Ms. McCanna never decided what activities the caregivers would engage in with clients, never disciplined the staff regarding how daily tasks were performed, and never supervised or managed the caregivers during working hours. ECF No. 64 ¶ 101–06.

Although it alone is not dispositive, the issue of control "is highly relevant to the FLSA analysis." *Razak*, 951 F.3d at 145. The "right to control" is a critical consideration for whether a worker is an employee. *Id.* (citing *Drexel v. Union Prescription Ctrs.*, 582 F.2d 781, 785 (3d Cir. 1978)). In fact, the Third Circuit has remanded summary judgment decisions involving "disputed facts regarding control," which were "not ripe for summary judgment." *Id.*; *Joyce v. Super Fresh Food Markets, Inc.*, 815 F.2d 943, 947–48 (3d Cir. 1987). In this case, the parties dispute how the daily tasks were to be implemented, how the assignments were distributed and accepted, and the staffing schedule. ECF No. 64 ¶¶ 57–60, 104–05. Therefore, summary judgment is an inappropriate juncture to resolve this issue.

The parties also dispute the second *Donovan* factor—whether workers could increase profit based on their managerial skill. Ms. Waller contends there was no opportunity for profit or loss based on her performance. According to Ms. Waller, she had a set hourly rate, and Ms. McCanna decided who would receive an assignment. ECF No. 64 ¶ 82; ECF No. 54 at 19. Defendants respond that "Ms. Waller could, and did, work as much or as little as she wished." ECF 63 at 11;

*see, e.g.*, ECF No. 64 ¶¶ 62, 86, 96. In other words, Defendants argue that Ms. Waller could earn more by working more. When weighing this factor, courts have rejected the argument that a worker has an "opportunity for profit" simply by working more hours. *See, e.g.*, *Gayle v. Harry's Nurses Registry, Inc.*, No. CV-07-4672, 2009 WL 605790, at *7 (E.D.N.Y. Mar. 9, 2009).

Regarding the issue of profits, Defendants further contend that workers could profit more by choosing assignments closer to home. ECF No. 63 at 11. As support, Defendants again emphasize workers' "broad latitude in scheduling," ECF No. 63 at 11, but Ms. Waller disputes having any control in the scheduling, ECF No. 68 ¶¶ 9, 14. The Third Circuit addressed a similar issue with Uber drivers—on one hand, drivers could choose their schedule, but on the other hand, Uber set the fare, decided which driver received a trip request, and had discretion to refund or cancel fares. *Razak*, 951 F.3d at 147. According to the Third Circuit, this dispute meant that a factfinder should resolve this second factor. *Id.* at 146–47. Since this case presents similar disputes of material facts, summary judgment is not the appropriate stage to resolve this issue.

The next disputed factor is the workers' "investment in equipment or materials required for his [or her] task." *Donovan*, 757 F.2d at 1382. Although Ms. McCanna paid for liability insurance for the workers, she did not pay for workers' automobile insurance, supplies, or any costs accrued with clients. *Compare* ECF No. 54 at 19 *with* ECF No. 63 at 12–13. Thus, a reasonable factfinder could find for either party on this issue of investment.

The parties do not dispute the fourth or sixth *Donovan* factors and agree that both of those favor Ms. Waller's position that she was an employee of Defendants. ECF No. 63 at 13–14; ECF No. 54 at 23 (agreeing that the work was both an integral part of the business and did not involve special skill) .

The last disputed factor is the permanence of the working relationship. The parties do not dispute that Ms. Waller worked for Defendants for almost six years. ECF No. 57 ¶ 17; ECF No. 64 ¶ 17. Nor do they dispute that Ms. Waller worked only for Defendants during this time period. ECF No. 63 at 13. However, Defendants contend that this factor favors them because Ms. Waller "was always free to work as much or as little as she wanted" and was "free to render services to any other company or client as she saw fit." *Id.* The Third Circuit has held that working continuously for several years with only one business is akin to an employee-employer relationship. *See Donovan*, 757 F.2d at 1387. Accordingly, the Court finds that this factor weighs in favor of Ms. Waller.

Overall, while certain factors are not disputed (e.g. whether special skill was involved), the majority of the factors have factual disputes. In such instances, the Third Circuit has remanded decisions that have decided this issue on summary judgment. *See Razak*, 951 F.3d at 145, 148 (3d Cir. 2020) (finding summary judgment "inappropriate" because of disputed material facts). A district court in such a situation should have the factfinder resolve the classification issue. *Verma*, 937 F.3d at 229 (citing Fed. R. Civ. P. 49 (guidelines for a special verdict sent to the jury)). Accordingly, the Court will DENY Ms. Waller's Motion for Summary Judgment on the issue of whether she should be classified as an employee.

### 2. Ms. Waller is Not Entitled to Summary Judgment Regarding Liquidated Damages

In her Motion for Summary Judgment, Ms. Waller asks the Court to decide the issue of whether Ms. McCanna is entitled to liquidated damages under the FLSA. ECF No. 54 at 26–27. Section 216 of the FLSA authorizes the recovery of unpaid wages and an additional equal amount of liquidated damages for violations under § 206 and § 207 of the FLSA. 29 U.S.C. § 216(c). Liquidated damages are considered compensatory, rather than punitive, because they "ease the

hardship endured by employees who were deprived of lawfully earned wages." *Sec'y U.S. Dep't of Labor v. Am. Future Sys. Inc.*, 873 F.3d 420, 433 (3d Cir. 2017); *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir. 1991). Liquidated damages are mandatory unless an employer shows that "it acted in good faith and that it had reasonable grounds for believing that it was not violating the Act." *Am. Future Sys.*, 873 F.3d at 433. While a court views an employer's good faith subjectively, "[t]he reasonableness requirement imposes an objective standard" on the employer, which prevents exoneration based on "[i]gnorance alone." *Williams v. Tri-Cnty.-Growers, Inc.*, 747 F.2d 121, 129 (3d Cir. 1984).

Because there are still factual disputes regarding Ms. Waller's worker classification that need to be resolved, deciding this issue is premature. Accordingly, the Court will DENY Ms. Waller's Motion for Summary Judgment on the issue of whether she is entitled to liquidated damages.

**B. Defendants' Motion for Partial Summary Judgment**

The Court will now turn to Defendants' Motion, which seeks summary judgment on Counts I and V. As noted previously, the moving party has the burden to demonstrate that no genuine dispute of material fact exists. *Goldenstein*, 815 F.3d at 146; *see also Aman*, 85 F.3d at 1080. While previously Ms. Waller had the burden to establish that no disputed material facts existed with respect to her Motion, the burden is now on Defendants with respect to their Motion seeking summary judgment on Counts I and V. *Aman*, 85 F.3d at 1080.

**1. Joint and Several Liability (Count I)**

In Count I of the Amended Complaint, Ms. Waller seeks to hold Ms. McCanna personally liable for violations under the FLSA, PMWA, and WPCL, but does so by asserting in a separate claim that Defendants are "jointly and severally liable pursuant to the participation theory." ECF

No. 21 at 6. Defendants argue that joint and several liability is not its own cause of action, so this claim must be dismissed. ECF No. 48 at 4. The Court agrees with Defendants that joint and several liability is a damages provision that attaches to a cause of action, rather than its own independent claim. *Duraney v. F.D.I.C.*, 388 Fed. App'x 102, 105 n.5 (3d Cir. 2010).

Defendants also argue that "the participation theory" does not apply to the FLSA, PMWA, or WPCL because such a finding would be redundant under statutes that already impose personal liability upon company representatives. ECF No. 49 at 5 (citing 29 U.S.C. § 203; 43 P.S. § 333.103(g); 43 P.S. § 260.2a)). In Pennsylvania, the participation theory attaches liability to individuals that work for a corporation because of their participation in a tortious act. *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 89–90 (Pa. 1983). In response, Ms. Waller contends that individuals can be held liable under the statutes at issue in this case. ECF No. 61 at 11. Therefore, according to Ms. Waller, this claim should not be dismissed. *Id.* As support, she cites caselaw that finds individual employers liable under the statutory provisions but not under the "participation theory." *Id.* at 11–12.

While Ms. Waller is correct that individuals can be held liable under the FLSA, PMWA, WPCL—a point Defendants concede—it is not because of the "participation theory" but, rather, under provisions of the statutes that impose personal liability on individuals. *See also* ECF No. 67 at 2. The caselaw that Ms. Waller relies on says as much. *See* ECF No. 61 at 5 (relying on *Scholly v. JMK Plastering, Inc.*, CIV.A. 07 CV 4998, 2008 WL 2579729, at *3 (E.D. Pa. June 25, 2008) imposing liability on an individual under the FLSA "because the statute's definition of 'employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee").

Therefore, Count II will be dismissed but Ms. Waller may seek personal liability against Ms. McCanna to the extent allowed under the statutes at issue in her other Counts. Accordingly, the Court will GRANT Defendants' Motion for Summary Judgment on Count I.

**2. The Pennsylvania Whistleblower Law (Count V)**

In Count V, Ms. Waller contends that Defendants retaliated against her, in violation of the Pennsylvania Whistleblower Law, after she purportedly reported wrongdoing by Ms. McCanna. The Pennsylvania Whistleblower Law prohibits an employer from discharging, threatening, or otherwise discriminating or retaliating against an employee for reporting "an instance of wrongdoing or waste by a public body." 43 P.S. § 1423(a). As discussed above, there are still disputed material facts regarding whether Defendants should be considered employers. Therefore, even if Ms. Waller otherwise sets forth a prima facie case of retaliation, such that summary judgment in favor of Defendants on this Count is denied, issues regarding her worker classification also remain for the factfinder to determine at trial.

To establish a prima facie claim under this statute, Ms. Waller must show that Defendants are a public body as defined under the statute, that she reported wrongdoing to her superior, and that she was fired due to her report. *Bailets v. Pa. Tpk. Comm'n*, 123 A.3d 300, 308 (Pa. 2015). Defendant argues that Ms. Waller has failed to meet the elements under the Pennsylvania Whistleblower Law on the grounds that (1) Defendants are not a "public body"; and (2) the alleged misconduct does not constitute "wrongdoing." ECF No. 49 at 9–15; *see also* ECF No. 67 at 3–4.

The catch-all provision for a "public body" includes those bodies "funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body." 43 Pa. C.S. § 1422. Although federal district courts "predict[ed]" that receiving Medicaid reimbursements was insufficient to constitute a public body, *see Cohen v. Salick Health Care, Inc.*,

772 F. Supp. 1521, 1526 (E.D. Pa. 1991), Pennsylvania courts have since held the opposite and found that receiving Medicaid reimbursements is sufficient to be considered a public body under the Pennsylvania Whistleblower Law, *Saltzman v. Thomas Jefferson Univ. Hosps., Inc.*, 166 A.3d 465, 476 n.8 (Pa. Super. 2017); *Denton v. Silver Stream Nursing & Rehab. Ctr.*, 739 A.2d 571, 576 (Pa. Super. 1999). The Court is persuaded that the intermediate state court decisions accurately reflect Pennsylvania law. Here, the parties agree that The Habilitation Group was entirely funded by Medicaid. ECF No. 68 ¶ 2. Therefore, Ms. Waller has successfully established that The Habilitation Group is a "public body" under the statute.

Defendant's second argument is that Ms. Waller did not report an act of wrongdoing. Under the statute, "wrongdoing" is defined as a "violation which is *not* of a merely technical or minimal nature of a Federal or State statute or regulation." 43 P.S. § 1422 (emphasis added). What is considered wrongdoing, by contrast, is a violation of a law or regulation "designed to protect the interest of the public" or "is one dealing with the internal administration" of the public body in question. *Gray v. Hafer*, 651 A.2d 221, 225 (Pa. Commw. 1994), *aff'd*, 669 A.2d 335 (Pa. 1995).

Ms. Waller's Complaint alleges two instances in which she reported wrongdoing. Ms. Waller alleges that she first reported wrongdoing when she texted Ms. McCanna that her wages were not reported by her employer. ECF No. 61-7 at 6. The Court is unclear what violation Ms. Waller alleges Ms. McCanna committed in this instance. As this appears to be a report of vague or simply subjectively wrong conduct, this does not rise to the level of wrongdoing under the Pennsylvania Whistleblower Law. *Greco v. Myers Coach Lines, Inc.*, 199 A.3d 426, 433 (Pa. Super. 2018) (citing *Sukenik v. Twp. of Elizabeth*, 131 A.3d 550, 555–56 (Pa. Commw. 2016)). The second instance that Ms. Waller claims rises to a report of wrongdoing occurred when Ms. Waller questioned Ms. McCanna's use of pandemic relief funds through the ODP. After Ms.

Waller repeatedly asked Ms. McCanna about disbursing these funds, Ms. McCanna told her that was not the purpose of the funds. ECF No. 61-6 at 4. In an email, Ms. Waller responded, "Thanks for clarifying that the CPS funds you received from ODP are not for your CPS workers." ECF No. 61-6 at 4. A few hours later, Ms. McCanna terminated her. *Id.*

According to Ms. Waller, misappropriating pandemic relief funds pursuant to the Paycheck Protection Program constitutes wrongdoing under the Pennsylvania Whistleblower Law. Defendants contend that the conversation at issue has nothing to do with the Paycheck Protection Program, and therefore, Ms. Waller has failed to establish wrongdoing on Defendants' behalf. ECF No. 49 at 7 n.1; *see also* ECF No. 67 at 4. Because this raises a genuine dispute of material fact, it is appropriate for a factfinder to resolve this dispute. *See e.g., Mraz v. Cnty. of Lehigh*, 862 F. Supp. 1344, 1349 (E.D. Pa. 1994) (dispute over misappropriation of funds was a question for the jury).

Accordingly, Defendants' Motion for Summary Judgment on Count V is DENIED.

## IV. Conclusion

For the foregoing reasons, Ms. Waller's Motion for Summary Judgment is hereby DENIED and Defendants' Motion for Summary Judgment is hereby GRANTED IN PART and DENIED IN PART as set forth in the accompanying ORDER.

DATED this 22nd day of November, 2022.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record